### OF THE

## TERRITORY OF ARIZONA

### DURING THE YEAR 1908.

[Civil No. 1022.   Filed January 18, 1908.]

[93 Pac. 281.]

TERRITORY OF ARIZONA on Relation of E. S. CLARK, Attorney General, Plaintiff and Appellant, v. J. N. GAINES, Tax Collector of Cochise County, Defendant and Appellee.

1. COURTS — SUPREME COURT — JURISDICTION — MANDAMUS — VENUE— REV. STATS. ARIZ. 1901, PAR. 1294, SUBD. 16, CONSTRUED.—Paragraph 1294, subdivision 16, *supra*, which provides that suit against public officers must be brought in the county in which defendant holds office, refers to the venue of cases in the district court and does not apply to a *mandamus* proceeding in the supreme court, which being an original proceeding in the supreme court, the geographical limits of the jurisdiction are not those of the county, but of the entire territory.

2. MANDAMUS — PARTIES — PLAINTIFF MUST BE BENEFICIALLY INTERESTED—REV. STATS. ARIZ. 1901, PAR. 3074, CONSTRUED.—Under paragraph 3074, *supra*, which requires that writ of *mandamus* "shall be issued upon affidavit, on the application of the party beneficially interested," the territory, having a beneficial interest to the extent of one-third of the total amount of certain taxes and their collection, is beneficially interested to a sufficient extent to maintain a proceeding by *mandamus* to compel the county tax collector to bring suit for collection of the taxes.

3. CONSTITUTIONAL LAW—GENERAL AND SPECIAL LAWS—TAXATION— LAWS 1903, ACT No. 92, CONSTRUED AND HELD CONSTITUTIONAL.— Act No. 92, *supra*, providing for the remission of all taxes delinquent prior to the year 1888 and imposing interest on delinquent taxes from January 1, 1901, only, is not objectionable as a special law coming within the inhibition of the Harrison act, both provisions thereof being general in character.

(270)

4. SAME—SAME—SAME—SAME.—The requirement of Act No. 92, *supra*, that if on the first day of January, 1904, any of the taxes covered by the provisions of the act shall remain delinquent, the tax collector shall proceed to enforce the payment thereof, together with certain penalties and costs by suit, is general in its application, and does not contravene that provision of Harrison act which prohibits the enactment of the special clause.

5. STARE DECISIS—EQUALLY DIVIDED COURT—DECISION NOT A PRECEDENT.—Where a judgment of the court is affirmed by an equally divided court, such decision does not have the force of a cogent precedent.

6. TAXATION—ACTION TO RECOVER TAXES—COMPROMISE—BOARD OF SUPERVISORS—AUTHORITY—REV. STATS. ARIZ. 1901, PAR. 973—CONSTRUED.—Paragraph 973, *supra*, providing that the board of supervisors shall have the power "to direct and control the prosecution and defense of all suits to which the county is a party, and to compromise the same," and further, "to do and perform all other acts and things which may be necessary to the full discharge of the duties of the chief legislative authority of the county government," confers no authority on the county board of supervisors to compromise any action for the collection of taxes.

7. TAXATION—ACTION TO RECOVER TAXES—TERMS OF COMPROMISE—REV. STATS. ARIZ. 1901, PAR. 3922, AS AMENDED BY ACT No. 92, LAWS OF 1903, CONSTRUED.—Paragraph 3922, as amended by Act No. 92, *supra*, specifies certain conditions under which the board of supervisors may compromise taxes, and any compromise which was not based upon any of the conditions contained therein is void.

8. TAXATION—TAX COLLECTOR—DUTY TO SUE NOT DISCRETIONARY—REV. STATS. ARIZ. 1901, PAR. 3917, AS AMENDED BY THE LAWS OF 1903, ACT No. 92.—Under paragraph No. 3917 as amended by Act No. 92, *supra*, it is the duty of the county tax collector, in the exercise of which he is without discretion, to bring suit to collect the delinquent taxes.

MANDAMUS by the Territory of Arizona, on relation of E. S. Clark, Attorney General, against J. N. Gaines, Tax Collector of Cochise County. Peremptory mandate granted.

E. S. Clark, for the Territory, petitioner herein.

The board of supervisors of Cochise county had no right or authority to compromise the taxes levied against the Copper Queen Mining Company. Section 973, Revised Statutes of 1901, does not give them that power, and there being no statutory authority to compromise such taxes, neither the tax collector nor the supervisors could compromise the amount

due for such taxes. See, in this connection, *State* v. *Nevada & California Mining Co.,* 15 Nev. 251; *County of Sacramento* v. *Central Pacific R. R. Co.,* 61 Cal. 254; *State* v. *Commissioners of Washoe County,* 5 Nev. 319; *State ex rel. Hess* v. *Commissioners of Washoe County,* 6 Nev. 108; *White* v. *Conover,* 5 Blackf. 463; *Rosenthal* v. *M. & L. Plank Road Co.,* 10 Ind. 361; *City of Lowell* v. *Commissioners of Middle Essex County,* 3 Allen, 550; *Finch* v. *Tehama County,* 29 Cal. 455.

Ben Goodrich, for Respondent.

The county treasurer owes no duty to the territory; there is no privity of contract, either express or implied, between him and the territory. He is not the officer of the territory, but the officer of the county, and his duty and obligation is to it so far as the collection of revenue is concerned, and until after the collection is made, he is not liable to the territory, because, under the statute, until that time he owes it no duty. *State* v. *Harris,* 89 Ind. 363, 46 Am. Rep. 169; *Goodlander Mill Co.* v. *Standard Oil Co.,* 63 Fed. 400, 11 C. C. A. 253, 27 L. R. A. 585; *Cunningham* v. *Macon & H. R. R. Co.,* 109 U. S. 454, 3 Sup. Ct. 292, 609, 27 L. Ed. 992; *Savings Bank* v. *Ward,* 100 U. S. 195, 25 L. Ed. 621; *Buckley* v. *Gray,* 110 Cal. 343, 52 Am. St. Rep. 88, 42 Pac. 900, 31 L. R. A. 862.

Act No. 92 of the Laws of 1903, page 48, relative to "back taxes," is unconstitutional, in that it is a special law "for the assessment and collection of taxes for territorial, county, township and road purposes," and discriminates between the taxes levied for years prior to 1888 and those for years subsequent to that date, and further discriminates as to the amount required to be paid, depending on whether for taxes delinquent between 1888 and January 1, 1901; between January 1, 1901, and December, 1903; and subsequent to January 1, 1904. That such a law is special legislation and therefore repugnant to the Harrison act, there can be no question. *Bravin* v. *Mayor of Tombstone,* 4 Ariz. 83, 33 Pac. 589; *Ex parte Sohncke,* 148 Cal. 262, 113 Am. St. Rep. 236, 82 Pac. 956, 2 L. R. A., N. S., 813; *State* v. *California Min. Co.,* 15 Nev. 234; *State* v. *Consolidated Virginia Min. Co.,* 16 Nev. 432; 1 Cooley on Taxation, p. 550; *Atlanta & F. R. Co.* v. *Wright,* 87 Ga. 487, 13 S. E. 579; *Wilson* v. *Supervisors of Sutter County,* 47 Cal. 91; *Cummings* v. *Michigan*

*National Bank of Toledo,* 101 U. S. 153, 25 L. Ed. 903;
*Exchange Bank* v. *Hines,* 3 Ohio St. 15.

NAVE, J.—This is a proceeding brought in this court by
the territory of Arizona, upon the relation of the attorney
general, to compel the tax collector of Cochise county to in-
stitute a suit pursuant to Act No. 92, p. 162, of the Laws of
the Twenty-second Legislative Assembly (Laws 1903), to col-
lect delinquent taxes from the Copper Queen Consolidated
Mining Company, a corporation. The issues before us are of
law; the facts appearing in the pleadings of the respective
parties. The more important averments of the petition are
that in 1901 the Copper Queen Consolidated Mining Com-
pany, a corporation, was the owner of certain real and per-
sonal property situated in Cochise county, whereof it made
return to the tax assessor; that the property was assessed
by that officer; that the board of equalization of that county,
upon due notice and hearing, added to the assessed valuation
thereof; that the total valuation as increased was $3,833,-
034.76; that the territorial board of equalization in that year
fixed the rate of taxes for territorial purposes at $1.17 on
each $100 valuation; that the board of supervisors of Cochise
county levied for county purposes a tax of $2.03 upon each
$100 valuation, whereby there became a total levy for county
and territorial purposes in the sum of $3.20 on each $100
valuation in said county; that the assessment-roll was made,
and duplicate thereof placed in the hands of the tax collector;
that the total taxes levied as aforesaid on the property of
said company amounted to the sum of $122,657.09; that the
said company paid to the county treasurer in partial pay-
ment thereof the sum of $23,265.76; that the remainder
of said taxes became delinquent, and was and still is delin-
quent and unpaid, in the sum of $99,391.33; that the said
delinquent taxes were placed upon the back tax book; that
by virtue of Act No. 92, page 162, of the Laws of the
Twenty-second Legislative Assembly, it became the duty of
respondent to collect said delinquent taxes by suit, which duty
respondent has neglected and refused to perform, although
demand has been made upon him by petitioner.

Respondent demurs that this court is without jurisdiction
of this action, that the petitioner is not shown to have legal
capacity to maintain this action, and that Act No. 92, *supra,*
is invalid, wherefore petitioner has no cause of action. Upon
XI Ariz.—18

the merits, respondent pleads that the Copper Queen Consolidated Mining Company brought suit against the county of Cochise and the tax collector thereof to restrain them from collecting or attempting to collect the taxes in question in excess of the amount tendered; that this suit was determined favorably to the company in the district court, was appealed to this court, and by it reversed and remanded for a new trial (*County of Cochise* v. *Copper Queen Consol. Min. Co.,* 8 Ariz. 221, 459, 76 Pac. 595, and 71 Pac. 946) ; that thereafter, by resolution of the board of supervisors of Cochise county adopted on June 7, 1904, said action was compromised; that under the compromise said company paid all the taxes thereby found to be justly and equitably due from it for the year 1901, and, pursuant to its stipulation in the compromise, dismissed that action on June 25, 1904.

1. Respondent contends that by virtue of subdivision 16, paragraph 1294, Revised Statutes of 1901, he must be sued in Cochise county, wherefore this court, sitting in Maricopa county, is without jurisdiction of this action. That subdivision reads as follows: "Suits against public officers must be brought in the county in which the officer holds his office." Paragraph 1294 has reference to the venue of cases in district courts only. This is disclosed, not merely by the context, but is irresistibly clear when it is observed that the provisions of that paragraph are inconsistent with the exercise of original jurisdiction by the supreme court in any case. In a technical sense, proceedings in this court do not have their venue in a county. Original jurisdiction is unequivocally conferred upon this court in a variety of proceedings, among them, by paragraph 3073, in proceedings in *mandamus.* Such jurisdiction must be exercised wherever this court may have its seat, but the geographical limits of the jurisdiction are not those of a county, but those of the territory. The demurrer as to jurisdiction is not well taken.

2. It is contended that the territory is without legal capacity to maintain this action, in that it is not beneficially interested. Paragraph 3074, Revised Statutes of 1901, requires that the writ of *mandamus* "shall be issued upon affidavit of the application of the party beneficially interested." The petitioner has a beneficial interest in the collection of the taxes in question to the extent in excess of one-third of the total amount thereof. It is true, as urged by the respondent, that the machinery of tax collection is in the hands of the

county officers, and that until the taxes are collected the duty does not devolve upon any county officer to account for the territory's proportion of the taxes or to remit it. But to the extent of collecting the territorial taxes, the officers of the county are acting as agents of the territory, and not independent of, or without relation to, the territory and its corporate interest. *County of Sacramento* v. *Central Pac. R. R. Co.*, 61 Cal. 257. We have no difficulty in finding that the territory is beneficially interested in this matter within the purview of the statute. *State* v. *Gracey*, 11 Nev. 223.

3. It is contended that Act No. 92, *supra*, is obnoxious to the Harrison act in the respect that it is a special law. This contention has been before us in some aspects and determined adversely to the contention. *Wallapai M. & D. Co.* v. *Territory*, 9 Ariz. 373, 84 Pac. 87; *Hughes* v. *Lazard*, 5 Ariz. 4, 43 Pac. 422. It is now urged that the act makes an unlawful discrimination in that it provides for the remission of all taxes delinquent prior to the year 1888, and in that it imposes interest on delinquent taxes from January 1, 1901, only. With respect to the taxes delinquent prior to the year 1888, the effect of the provision objected to is that of a statute of limitation, applicable to all of a general class. As to the second feature of the special objection, the act prescribes the same procedure for the collection of all taxes delinquent after the year 1888, but provides for the imposition of a charge of interest on delinquent taxes computed only from the first day of January, 1901. This, also, is general in its application. As a final objection to the act in this respect, it is pointed out that special penalties attach to those delinquents against whom suit may be brought, it being provided that if on the first day of January, 1904, any of the taxes covered by the provisions of the act shall remain delinquent (the act of date March 19, 1903), the tax collector shall proceed to enforce the payment thereof, together with certain penalties and costs, by suit. This provision is also general in its application. We cannot affirm that any of the classifications involved are unreasonable or unjust. The principles governing such an inquiry have been adequately treated in former opinions. *Bennett* v. *Nichols*, 9 Ariz. 138, 80 Pac. 393; *Sanford* v. *Tucson*, 8 Ariz. 247, 71 Pac. 903; *Maricopa County* v. *Burnett*, 8 Ariz. 242, 71 Pac. 909. This act, in the features considered, is not obnoxious either to the letter or the spirit of the organic law.

4. Upon the merits, as we have shown, respondent presents as his excuse for refusing to institute suit to collect the unpaid taxes in question, and as a bar to the issuance of a writ of mandate to bring such suit, the acts of the board of supervisors and the Copper Queen Consolidated Mining Company, in compromise of a suit to restrain the collection of thèse taxes. The attorney general maintains that the board of supervisors had no power to compromise the action, and contends that the matter is now to be resolved by the application of the doctrine *stare decisis.* He refers us to the case of *Schuerman* v. *Territory,* 10 Ariz. 255, 103 Pac. 1134. We decided that case by divided bench without rendering àn opinion, Mr. Justice Sloan not sitting. It is true that the judgment there affirmed determined, among other matters, the precise point now before us; but, the affirmance being by a divided court, it does not have the force of a cogent precedent. *Etting* v. *United States Bank,* 11 Wheat. (U. S.) 59, 6 L. Ed. 419. Wherefore, we will inquire into the matter involved as if it were a matter of novel impression. Respondent finds in paragraph 973, Revised Statutes of 1901, full authority for the board of supervisors to make the compromise in question. By a subdivision of that paragraph, there is conferred upon boards of supervisors the power "to direct and control the prosecution and defense of all suits to which the county is a party, and to compromise the same." The defendants in the suit in question were the county of Cochise and M. D. Scribner, the tax collector of that county. Under our revenue law, the board of supervisors has a supervisory function to perform in the assessment and collection of taxes, but assessment and collection do not directly devolve upon that body. Assessments are made by the county assessor, and may be raised or lowered by the county board of equalization. The county board of equalization, although its personnel is that of the board of supervisors, is a distinct tribunal, and is not the board of supervisors. Moreover, after the board of equalization has performed its duties of rectifying undervaluations or overvaluations, it has exhausted its functions. The collection of taxes then devolves upon the tax collector, over whom the board of supervisors exercises only the same control which it exercises over all other county officers. The county of Cochise, as a municipal body, was not a proper party to the suit brought by the Copper Queen Consolidated Mining Company to restrain the collection of the

taxes assessed upon it by the board of equalization, and
which, by virtue of that assessment, it became the duty of the
tax collector to collect. It follows that the board of super-
visors did not derive authority from the provisions above
quoted to compromise this suit. Its authority would be more
appropriately attributable to another provision of the same
paragraph, conferring upon that board authority "to do and
perform all other acts and things which may be necessary
to the full discharge of the duties of the chief legislative au-
thority of the county government." But our system of
revenue collection is inconsistent with a theory that, under
that or any other provision, a board of supervisors may raise,
lower or remit taxes. The only powers possessed by such
boards are those expressly conferred by statute or neces-
sarily implied therefrom. *Santa Cruz County* v. *Barnes,* 9
Ariz. 42, 76 Pac. 621; *State* v. *Central Pac. R. R. Co.,* 9 Nev.
79. Jurisdiction to remit or compromise taxes we should find
conferred in express terms carefully conditioned; it may not
be predicated upon an inference. We conclude, therefore,
that the attempted compromise pleaded by respondent was
void. *State* v. *Central Pac. R. R. Co.,* 9 Nev. 79, 10 Nev.
87; *Sacramento Co.* v. *Central Pac. R. R. Co.,* 61 Cal. 254.
It is cogent that the legislature, by a necessary inference from
its enactment of Act No. 34, p. 56, of the Laws of 1891, has
given our statutes the same construction. The parts of para-
graph 973, above quoted, and the general system of the as-
sessment and collection of taxes (except as to matters of
procedure alone in the collection of delinquent taxes) have
been in effect since 1887. Section 1 of Act No. 34, *supra*
(page 56), reads as follows: "That all rebates, adjustments,
settlements or compromises heretofore made by the boards of
supervisors, in the various counties, of tax values, tax assess-
ments or taxes, upon any property or of any suit or proceed-
ing for the collection of any tax or taxes, be and the same
are hereby ratified and confirmed, provided, however, nothing
herein contained shall be construed or held to mean that the
said boards of supervisors shall hereafter have any right,
power or authority to rebate, adjust, settle, compromise or
diminish any tax, taxes, tax values, assessments or levies,
or any suit or proceeding for the collection of any tax or
taxes upon any property except as a board of equalization
in the manner prescribed by law." This curative act, though
not re-enacted in the Revision of 1901, its purpose having

been served, is an implicit recognition by the legislature that such compromises by board of supervisors were without authority of law.

It is fitting still further to point out that section 91 of the revenue law (Rev. Stats. 1901, par. 3922), as amended by Act No. 92, *supra,* specifies conditions under which the board of supervisors may compromise taxes. That act took effect on March 19, 1903, and therefore was in effect at the time of the attempted compromise. The compromise was not based upon any conditions upon which a compromise may be made under the authority conferred by that section. Even if the board of supervisors, by virtue of the provisions of paragraph 973, Revised Statutes of 1901, had possessed the power to compromise taxes, the enactment of a statute specifying the terms upon which the taxes may be compromised would have the effect to restrict the authority formerly possessed by it.

Under section 86 of the revenue law (Rev. Stats. 1901, par. 3917), as amended by Act No. 92, it is the duty of respondent, in the exercise of which he is without discretion, to bring suit to collect the delinquent taxes in question.

The peremptory mandate will issue as prayed.

KENT, C. J., and SLOAN and CAMPBELL, JJ., concur.